## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| TUMEY L.L.P., TOD T. TUMEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-00113-CV-RK |
| | ) | |
| MYCROFT AI INC., JOSHUA | ) | |
| MONTGOMERY, MICHAEL LEWIS, | ) | |
| | ) | |
| Defendants. | | |

## ORDER

Before the Court is Defendant Michael Lewis's motion to dismiss (Doc. 17), Defendant Mycroft AI, Inc.'s motion to dismiss (Doc. 28), and Defendant Joshua Montgomery's motion to dismiss (Doc. 64). The motions are fully briefed. (Docs. 18, 29, 35, 38, 40, 47, 65, 70, 80.) For the reasons below, Defendant Michael Lewis's motion to dismiss (Doc. 17) is **GRANTED in part and DENIED in part**, Defendant Mycroft AI, Inc.'s motion to dismiss (Doc. 28) is **GRANTED in part and DENIED in part**, and Defendant Joshua Montgomery's motion to dismiss (Doc. 64) is **GRANTED in part and DENIED in part.** Counts IV, IX, and X are **DISMISSED.**

## Background

Plaintiffs Tumey L.L.P. and Tod T. Tumey's Verified Complaint (Doc. 1) sets forth the relevant background. For purposes of analyzing Defendants' motions to dismiss for failure to state a claim upon which relief may be granted, the Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (citation and quotation marks omitted).

Plaintiffs allege Defendants are perpetrating ongoing cyberattacks, harassment, threats, and other damage. (Doc. 1, ¶ 1.) The conduct is alleged to be in retaliation for Plaintiffs' representation of Voice Tech Corporation in connection with a dispute between Voice Tech and Mycroft arising from Mycroft's alleged infringement of Voice Tech's patents (U.S. Patent Nos. 9,794,348 and 10,491,679 (the "Patents")). (*Id.*, ¶¶ 2-3.) Voice Tech initially retained Plaintiffs to raise patent infringement claims against Mycroft. (*Id.*, ¶ 2.) Plaintiffs are counsel of record

for Voice Tech in multiple related matters, including two lawsuits between Voice Tech and Mycroft that are pending before this Court (*Voice Tech Corporation v. Mycroft AI Inc.,* W.D.Mo. Case No. 4:20-cv-111, and *Mycroft AI Inc. v. Voice Tech Corporation,* W.D.Mo. Case No. 4:20-cv-662 (the "Patent Suits" or the "Voice Tech Matters")) and two *inter partes* review proceedings before the Patent Trial and Appeal Board ("PTAB") involving Voice Tech's Patents (*Unified Patents, LLC v. Voice Tech Corporation*, IPR2020-01018, and *Mycroft AI Inc. v. Voice Tech Corporation*, IPR2020-01739). (*Id.*)

The Complaint alleges that "in retaliation against Plaintiffs for their representation of Voice Tech, Defendants have undertaken and/or incited a vicious, relentless, and escalating campaign of . . . harassment by telephone and email, online hacking, phishing, identity theft, and other cyberattacks, and even [have made] threats of death and bodily harm [] toward Tumey and his family." (*Id.*, ¶ 3.) "[T]he aggressors have used highly-sophisticated techniques designed to conceal the source of this information warfare assault[.]" (*Id.*, ¶ 4.) "[T]he chronology and the record . . . demonstrate that Defendant Mycroft and two of its founders and managing executives: its CEO, Lewis, and its First Officer, Montgomery—self-declared "folks who specialize in information warfare"—are behind [the attacks]." (*Id.*)

"[T]he assaults directly corresponded with events in the [Patent Suits,] including events that would not have been publicly or widely known[.]" (*Id.*, ¶ 5.) "Defendants have . . . published articles online revealing their role" in the attacks, including "a post by Montgomery to Mycroft's website just as the attacks began[.]" (*Id.*, ¶ 6.) The post "depict[s] Montgomery dressed as a 'troll hunter' in chain mail battle armor and casts Plaintiffs as the apparent 'trolls' he is hunting[.]" (*Id.*) The post "include[s] menacing comments against Plaintiffs such as: 'I don't like letting these matters go quietly. In my experience, it's better to be aggressive and "stab, shoot and hang" them, then dissolve them in acid. Or simply nuke them from orbit, it is the only way to be sure.'" (*Id.*)

"This Court already found in one of the pending Patent Suits that, at a minimum, the harassment that Plaintiffs received around the time of this post was induced by Montgomery's post. The Court thus ordered Mycroft to remove certain of its content." (*Id.*, ¶ 7); Case No. 20-cv-00111-RK, Doc. 23, pp. 13-15. "Yet the attacks continued and even increased in severity, at times virtually shutting down Tumey L.L.P.'s communication systems[.]" (Doc. 1, ¶ 8.) The attacks also "intrud[ed] across the boundary into Tumey's private life[,]" including with "hack[s]

2

into personal emails between Tumey, his wife, and their young daughter[.]" (*Id.*)  More recently, Defendants "publish[ed] new menacing comments on their website, seeming to admit they are the perpetrators of the assaults against Plaintiffs by [writing] that Plaintiffs should not 'pick fights with folks who specialize in information warfare.  You'll get your ass kicked.'" (*Id.*, ¶ 9.)

The "'information warfare' unleashed by Defendants . . . was intended to[,] has caused, and is causing substantial harm to Plaintiffs, including not only monetary damage[s], but also emotional distress, business interruptions, damage to professional relationships and reputation, and other irreparable injuries." (*Id.*, ¶ 11.)  "Although Plaintiffs have taken steps to seek relief from Defendants' attacks against them, including reporting the conduct described herein to authorities and retaining the services of a cyber-expert to investigate the attacks and defend their systems, these actions have failed to deter Defendants from continuing to engage in an ongoing pattern of abusive and illegal activity against the Plaintiffs." (*Id.*, ¶ 13.)

Plaintiffs filed their verified complaint against Defendants on February 24, 2021, asserting claims for: (1) violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), pursuant to 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO, pursuant to 18 U.S.C. § 1962(d); (3) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (4) violation of the Stored Wire and Electronic Communications Act ("SCA"), 18 U.S.C. § 2701 et seq.; (5) computer tampering in violation of § 569.095, Rev. Stat. Mo.; (6) Breach of Computer Security in violation of Tex. Civ. Prac. & Rem. Code § 143.001; (7) intrusion on seclusion; (8) tortious interference with business expectancies; (9) assault and battery; and (10) intentional infliction of emotional distress.  Plaintiffs seek immediate and permanent injunctive relief, compensatory and punitive damages, as well as other statutory relief, including treble damages, and attorney's fees and costs.

Additional facts are set forth as necessary.

## Legal Standards

### I.      Rule 12(b)(2) Lack of Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must allege "sufficient facts in the complaint to support a reasonable inference that defendant can be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008).  "[T]he party asserting [personal] jurisdiction bears the burden of establishing a prima facie case." *Id.*  A complaint will be factually deficient if it does not allege sufficient facts upon which jurisdiction can rest.  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).  "If the defendant

3

controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (internal quotation marks omitted). "Its showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* "[T]he evidentiary showing required at the prima facie stage is minimal[.]" *LearSchmidt Inv. Grp., LLC v. AB-Alpine SPE, LLC.*, No. 2:19-CV-04053-NKL, 2019 WL 2271169, at *1 (W.D. Mo. May 28, 2019) (quoting *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)). The Court will view the evidence in the light most favorable to the party asserting jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011).

## II.    Rule 12(b)(6) Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss a party's claims for "failure to state a claim upon which relief can be granted[.]" To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole*, 599 F.3d at 861 (citation and quotation marks omitted). "In addressing a motion to dismiss, [t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation and internal quotation marks omitted).

## Discussion

## I.    Personal Jurisdiction

Defendants Lewis and Montgomery argue they are not subject to personal jurisdiction in this Court pursuant to Missouri's long-arm statute and the Due Process Clause of the Constitution. Plaintiffs are residents of Texas. (Doc. 1, ¶¶ 17-18.) Lewis is a resident of California, and Montgomery is a resident of Hawaii. (*Id.*, ¶¶ 20-21.) Mycroft, AI Inc. is a Delaware corporation with its principal place of business in Kansas City, Missouri. (*Id.*, ¶ 19.)

4

There are two types of personal jurisdiction: specific and general. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction refers to a court's authority over a defendant where the case before the court is unrelated to the defendant's forum activities. *Id.* at 127. To be subject to general jurisdiction, a corporation's affiliations with the forum state must be "so constant and pervasive 'as to render [it] essential[ly] at home'" in that state. *Id.* (citation omitted).

As to specific personal jurisdiction, "[a] federal court may assume jurisdiction over a non-resident defendant only to the extent permitted by the forum state's long-arm statute [(sufficient conduct)] and the Due Process Clause of the Constitution [(sufficient contact)]." *Clockwork IP, LLC v. Clearview Plumbing & Heating Ltd.*, 127 F. Supp. 3d 1020, 1025 (E.D. Mo. 2015) (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Missouri's long-arm statute provides:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of such acts: (1) The transaction of any business within this state; (2) The making of any contract within this state; (3) The commission of a tortious act within the state; (4) The ownership, use or possession of any real estate in this state . . . Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Mo. Rev. Stat. § 506.500.

Due process requires a non-resident defendant's contacts with the forum state to be significant enough that "the suit does not offend traditional notions of fair play and substantial justice." *Peoples Bank v. Frazee*, 318 S.W.3d 121, 128 (Mo. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant has sufficient minimum contacts with the forum state to justify the exercise of personal jurisdiction if defendant should reasonably foresee or anticipate that its actions could result in being subject to a lawsuit in the state. *Id.* at 129.

## A. Missouri Long-Arm Statute[1] (Sufficient Conduct)

Plaintiffs' Verified Complaint alleges personal jurisdiction over Montgomery and Lewis because they "regularly conduct business out of Mycroft's principal place of business in this judicial district[,]" and "acted as agents of Mycroft and/or acted out of their own personal interest and financial stake in that company" in the actions relevant to the Verified Complaint. (Doc. 1, ¶ 25.) Plaintiffs allege that Defendants all have continuous and systematic contacts with, have purposefully availed themselves of the privilege of conducting activities in, and have enduring contacts in this judicial district. (*Id.*, ¶ 26.) Plaintiffs additionally allege Defendants are subject to personal jurisdiction in this judicial district through their regular transaction of business in this state and their commission of tortious acts within the state under § 506.500, Rev. Stat. Mo. (*Id.*, ¶ 27.)

Lewis argues that communications with Missouri-based businesses through mail, telephone, fax, email, or internet do not, alone, amount to the transaction of business under the statute. Lewis also argues Mycroft's business activities have nothing to do with the conduct alleged in the Verified Complaint. Montgomery cites *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984), for the principle that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him" and "[e]ach defendant's contacts with the forum State must be assessed individually."

---

[1] In resisting Defendants' motions to dismiss for lack of personal jurisdiction, Plaintiffs also argue 18 U.S.C. § 1956 "authorizes the exercise of personal jurisdiction against all defendants claimed to be violating the RICO statute." Plaintiffs further assert the RICO claims they allege "are based on the same common nucleus of facts as other asserted claims," so "RICO's nationwide jurisdiction also establishes personal jurisdiction as to those claims."

Under the Federal Rules of Civil Procedure, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). RICO contains a subsection, 18 U.S.C. § 1965(a), allowing plaintiffs to institute a RICO action against any defendant in the district where that defendant "is found" or "transacts [its] affairs." RICO further "contains a nationwide service provision declaring that if a court has personal jurisdiction over one or more RICO defendants, the court may exert jurisdiction over other parties if required to promote the ends of justice." *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 913-14 (W.D. Mo. 2010) (citing 18 U.S.C. § 1965(b)). "The Eighth Circuit has not addressed this provision." *Id.* at 914.

Here, Plaintiffs only assert RICO claims against Defendants Montgomery and Lewis, not Mycroft. (Doc. 1, pp. 27, 35.) Montgomery is a resident of Hawaii. (*Id.*, ¶ 20.) Lewis is a California resident. (*Id.*, ¶ 21.) In their Verified Complaint, Plaintiffs did not allege personal jurisdiction over Defendants Montgomery and Lewis based on Rule 4(k)(1)(C) or on RICO subsection 18 U.S.C. § 1965(b).

Regardless, considering that the Eighth Circuit has not addressed 18 U.S.C. § 1956(b) and the Court's analysis finding personal jurisdiction proper under Missouri's long-arm statute and due process, the Court need not and does not decide whether personal jurisdiction over Lewis and Montgomery is authorized pursuant to 18 U.S.C. § 1956(a) and (b).

Section 506.500, Rev. Stat. Mo., provides for personal jurisdiction over a non-resident defendant that has committed a tortious act within the state as to any cause of action arising from the doing of any of such acts. "Missouri courts have interpreted subsection (3) [of section 506.500] to include 'extraterritorial acts of negligence producing actionable consequences in Missouri.'" *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012) (quoting *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. 1987)). Jurisdiction is authorized where "a defendant can reasonably foresee his or her negligent actions having consequences felt in Missouri[.]" *Id.* at 911.

Here, Plaintiffs allege Defendants' cyberattacks and related conduct "occurred in connection with the operation of Mycroft[.] . . . Defendants Montgomery and Lewis intentionally and knowingly misused their control over Mycroft, an otherwise legitimate business entity, to undertake and perpetrate these illegal acts against Plaintiffs." (Doc. 1, ¶ 128.) Plaintiffs allege "in undertaking their abusive conduct toward Plaintiffs, Defendants Montgomery and Lewis . . . had a common purpose: to punish the proper assertion of patent infringement rights (including the obstruction of any counsel who would represent clients in the prosecution of such intellectual property rights) in order to advance their own pecuniary and business interests, and to ultimately gain an undue advantage in the pending Voice Tech Matters" in this Court. (*Id.*, ¶ 136.) Plaintiffs further allege Lewis and Montgomery "undertook to gain an undue advantage in the pending Voice Tech Matters through illegal harassment, threats and damage to [Plaintiffs] such that they would be unable or unwilling to continue prosecuting the Voice Tech Matters filed against Mycroft by Tumey L.L.P. on behalf of its client." (*Id.*, ¶ 137.) Plaintiffs allege Lewis and Montgomery's conduct has a goal of "eliminating (through any means), any potential assertion of patent infringement rights[,]" (*Id.*, ¶ 144) and argue this includes obstructing the judicial process in the forum state in the context of the pending Patent Suits. (Doc. 35, p. 8; Doc. 70, p. 9.) Because Plaintiffs allege that non-resident defendants Lewis and Montgomery have committed one or more tortious acts producing actionable consequences in Missouri, Defendants' conduct falls within the Missouri long-arm statute.

## B. Due Process (Sufficient Contact)

Establishing specific personal jurisdiction requires a two-part analysis: (1) defendant's conduct must fall within the long-arm statute, and if it does, (2) personal jurisdiction can be exercised only if it is consistent with the due process requirements of the Fourteenth Amendment.

7

*Myers*, 689 F.3d at 909. The non-resident defendant's contacts with the forum state must not be "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Defendant must have committed some act by which it "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Peoples Bank*, 318 S.W.3d at 129 (quoting *Burger King*, 471 U.S. at 475). A defendant's purposeful availment in the forum state ensures, among other things, that jurisdiction is not established through unilateral acts of others or by random occurrences, but by a defendant's own actions and decisions. *Burger King,* 471 U.S. at 475-76.

A five-part test helps to determine whether a non-resident defendant's contacts with the forum state establish personal jurisdiction within the confines of due process. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The factors are: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Id.* The first three factors are the most important. *Hand v. Beach Ent. KC, LLC*, 425 F. Supp. 3d 1096, 1107 (W.D. Mo. 2019). "Because the first three factors are closely interrelated, we consider them together." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).

The "nature and quality" and "quantity" of Lewis and Montgomery's contacts with Missouri, as well as the relationship of those contacts to the cause of action, weigh in favor of personal jurisdiction. Plaintiffs allege that Montgomery and Lewis's tortious conduct is intended to and has had some effect upon the judicial process in the forum state in the Patent Suits in this Court. The tortious conduct is connected to the allegations Plaintiff lodges against Lewis and Montgomery in this case. They allege "[u]pon information and belief, the cyberattacks . . . were committed by or at the direction of the Defendants [(including both the individual defendants and Mycroft)] and/or were purposely incited by them." (Doc. 1, ¶ 116.) The Verified Complaint connects Defendants Lewis and Montgomery's contacts with the cause of action. Plaintiffs allege "[w]hile such sophisticated cyberattacks by design conceal their true source, the circumstances of this case, including the timing [(connected with litigation in which Mycroft is a party)] and targeted nature of the attacks, and the public proclamations by Defendants regarding their hacking experience and expertise in 'information warfare,'—including directly in reference to the Voice

8

Tech Matters—[(on the Mycroft website and/or social media accounts)] reveal that Defendants are the source of the attacks." (*Id.*, ¶ 117.)[2]

As to the secondary factors, Missouri's particular interest in hearing this case is neutral, as the case involves a Missouri-based company defendant as well as out-of-state defendants and plaintiffs. The factor of convenience or inconvenience to the parties weighs against personal jurisdiction in that this judicial district is inconvenient for most of the parties.

On the whole, the weight of the due process factors favors subjecting Defendants Lewis and Montgomery to personal jurisdiction in Missouri to defend this lawsuit. Viewing the evidence in the light most favorable to Plaintiffs, it does not offend notions of fair play and substantial justice for Defendants Lewis and Montgomery to be haled into court in Missouri for their tortious conduct in connection with the Patent Suits in this forum. As such, this Court can exercise specific personal jurisdiction over Defendants without violating due process.

Defendants Lewis and Montgomery's motions to dismiss are denied on this ground.

---

[2] Lewis's declaration states:

> I have never visited the state of Missouri for business or otherwise. I do not attend meetings or conferences there, and do not direct any business or advertising toward residents of Missouri. I do not hold any real estate or personal property in Missouri. In fact, other than being the CEO of Mycroft, whose principal place of business is Missouri, I have no connection or affiliation whatsoever with the state.

(Doc. 18-1, ¶ 6.) He goes on to declare, "I have had nothing to do with any of the cyber activities set forth in Plaintiffs' complaint. I have no reason to believe that Mycroft or Mr. Montgomery have had anything to do with those activities, either." (*Id.*, ¶ 7.)

Similarly, Montgomery attests in his declaration, "I have never lived in Missouri and never owned any real property in Missouri. I have not been to Missouri since 2019. Other than being an officer of Mycroft, whose principal place of business is Missouri, I have no other connection or personal business in Missouri." (Doc. 65-2, ¶ 6.) Montgomery further declares:

> I have had nothing to do with any of the bad acts, other than exercising my First Amendment Right, alleged by Plaintiffs. I also have no reason to believe that anyone at Mycroft or Mr. Michael Lewis have had anything to do with those activities. . . . I did not do any of the illegal and bad acts that Plaintiffs complain about.

(*Id.*, ¶ 7.)

In light of the "minimal" prima facie showing required of Plaintiffs and this Court's duty to view the evidence in the light most favorable to Plaintiffs, the "testing" by these self-serving statements in the declarations presented with Defendants' motions is insufficient to overcome Plaintiffs' showing here as to personal jurisdiction.

## II.    Failure to State a Claim

All Defendants argue Plaintiffs fail to state a claim upon which relief can be granted in Counts III through X of their Verified Complaint, and Defendants Lewis and Montgomery argue Plaintiffs fail to state a claim in Counts I and II against them, as well.

### A.    Count I - Violation of RICO, 18 U.S.C. § 1962(c)- Wire Fraud, Tampering With a Witness, and Retaliating Against a Witness

Title 18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." An "enterprise" includes any individual or corporation, § 1961(4) and "racketeering activity" includes wire fraud in violation of § 1343, tampering with a witness in violation of § 1512, and retaliating against a witness in violation of § 1513, among other conduct. § 1961(1).

Defendants Lewis and Montgomery argue Plaintiffs lack standing as to their RICO claims because they fail to allege concrete financial loss. They further argue Plaintiffs fail to plead the elements of their claims with requisite specificity, particularly as to the predicate offenses and the "pattern" element. The Court finds Plaintiffs allege "enough facts to state a claim to relief that is plausible on its face" that Defendants Lewis and Montgomery violated § 1962(c). *Twombly*, 550 U.S. at 570.

#### i.    Concrete Financial Loss

Plaintiffs seek general monetary damages (Doc. 1, ¶¶ 11, 148) and specify that these damages include:

> actual financial loss in the form of employee time spent addressing and responding to hacking attacks, hiring a computer specialist to defend against such attacks, costs associated with increased security (both physical and virtual) at Plaintiffs' offices and home, the inability to access Plaintiffs' property (firm phone lines and email accounts) for the significant periods of time when functionality was entirely shut down due to the volume of cyberattacks, and business loss damage in the form of reputational injury, lost clients, and loss of potential business and business expectancy.

*Id.* at ¶ 149.

Defendants Lewis and Montgomery's arguments as to standing are without merit.

10

### ii. Racketeering Activity - Predicate Offenses

Wire fraud occurs when someone, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice[.]" § 1343. "When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *Wisdom v. First Midw. Bank, of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999).

Tampering with a witness includes, in relevant part, knowingly using intimidation, threatening, or corruptly persuading another person, or attempting to do so, or engaging in misleading conduct toward another person with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding or (2) cause or induce any person to withhold testimony, a record, a document, or other object from an official proceeding or be absent from an official proceeding to which that person was summoned by legal process. § 1512(b). Witness tampering also includes corruptly obstructing, influencing, or impeding any official proceeding, § 1512(c), and intentionally harassing another person thereby hindering, delaying, preventing or dissuading any person from attending or testifying in an official proceeding, § 1512(d)(1).

Retaliating against a witness includes, in relevant part, knowing engagement in any conduct causing damages to the tangible property of another person, or threatening to do so, with intent to retaliate against any person for attending an official proceeding as a witness or party, giving testimony, or producing any record, document, or other object in an official proceeding. § 1513(b). It also includes knowingly and with the intent to retaliate, taking any action harmful to any person, including interference with the lawful employment or livelihood of a person for providing a law enforcement officer truthful information about the commission or possible commission of a federal offense. § 1513(e).

Here, Plaintiffs set forth with detail the elements required for their predicate acts, as well as attaching voluminous examples of the subject communications. (Doc. 1 at ¶¶ 52-127, 170-192; Doc 1-9). These allegations and attachments satisfy the particularity requirement to survive a motion to dismiss.

11

### iii. Pattern Element

A "pattern of racketeering activity" is defined to require two or more acts of racketeering activity occurring within ten years of one another. 18 U.S.C. § 1961(5). Further, a pattern must be comprised of related racketeering predicates that are "similar in method, purpose, and result." *Diamonds Plus, Inc.*, 960 F.2d at 769. The predicates must also be shown to "amount to or pose a threat of continued criminal activity." *Id.* The continuity element is satisfied where a series of related predicates extends over a substantial time period or is "part of an ongoing entity's regular way of doing business[.]" *Id.* A pattern's existence is a factual question. *Id.*

Here, Plaintiffs allege the purpose of the related predicates is "to punish the proper assertion of patent infringement rights (including the obstruction of any counsel who would represent clients in the prosecution of such intellectual property rights) in order to promote Mycroft's mission of promoting open source innovation, which is part of Mycroft's business model for success, and to ultimately gain an undue advantage in the pending Voice Tech Matter." (Doc. 1, ¶ 160.) Plaintiffs' allegations describe the method as using Defendants' experience and background in advanced and sophisticated hacking techniques, through use of servers and resources from overseas, with the result of advancing their illegal computer warfare scheme against Plaintiffs and eliminating and punishing any assertions of intellectual property rights in conflict with their open-source business model's success. (*Id.*, ¶¶ 161, 167.) Plaintiffs also allege both that the predicates amount to or pose a threat of continued criminal activity, spanning over a year (*Id.*, ¶ 167), and that they are part of Mycroft's way of doing business (*Id.*, ¶ 165). Plaintiffs' allegations as to a "pattern" of racketeering activity is sufficient to survive a motion to dismiss.

Accepting the allegations contained in the Verified Complaint as true and drawing all reasonable inferences in favor of the nonmoving party, Plaintiffs' Count I states a claim for which relief may be granted.

### B. Count II - Violation of RICO, 18 U.S.C. § 1962(d) - Conspiracy

Because Lewis and Montgomery's arguments as to conspiracy are based entirely on the success of its argument that Plaintiffs failed to state a claim in Count I, these arguments fail. The Court finds Plaintiffs stated a claim sufficient to survive a motion to dismiss in Count I, and thus Lewis and Montgomery's argument as to Count II is denied.

## C. Count III – Violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030

Title 18 U.S.C. § 1030(g) provides for a civil action for compensatory damages and injunctive relief for conduct including, in relevant part, intentionally accessing a protected computer without authorization resulting in recklessly causing damage in the form of "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." Section 1030(g) contains an express limitation: "A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." A civil action is provided for where a person "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage" and caused or would have caused, in relevant part "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value[.]" § 1030(c)(4)(A)(i)(I).

CFAA defines a "protected computer" as including one that "is used in or affecting interstate or foreign commerce or communication[,]" and "damage" as "any impairment to the integrity or availability of data, a program, a system, or information[.]" § 1030(e)(2)(B) and (e)(8). Under CFAA, "loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." § 1030(e)(11).

Here, Plaintiffs' CFAA allegations set forth facts sufficient to state a claim that Defendants violated 18 U.S.C.A. § 1030 in a manner giving rise to a civil action. Plaintiffs allege Defendants "without authorization, knowingly, intentionally and with an intent to defraud, accessed and attempted to access Plaintiffs' protected computers and protected computer network beginning by at least June 1, 2020, and on multiple occasions thereafter." (Doc. 1, ¶ 202.) Plaintiffs allege their "computer systems, which the Defendants accessed or attempted to access on numerous occasions, were used to conduct business worldwide and therefore were 'used in or affecting interstate or foreign commerce or communication' and meet the definition of a 'protected computer' set forth in 18 U.S.C. § 1030(e)(2)(B)." (Id., ¶ 203.) Plaintiffs further allege Defendants "unlawfully obtained information from Plaintiffs' protected computers and protected

computer networks[,]" "obtained information of value from Plaintiffs' protected computers without authorization and used such information to further its intended fraud against Plaintiffs[,]" and "knowingly caused the transmission of a program, information code or command to Plaintiffs' protected computer which intentionally caused damage to Plaintiffs." (*Id.*, ¶¶ 206-207, 209.)

> Plaintiffs specify that
>
> on June 1, 2020, and likely on many other occasions as well, upon information and belief, Defendants accessed Plaintiffs' protected computers, computer systems and computer networks and accessed one or more Tumey L.L.P. email accounts and reviewed the contents of emails. Defendants then used the information found in the illegally accessed email accounts to craft personal, targeted phishing emails to Plaintiff Tumey that would appear legitimate (i.e., that would appear to come from his 12-year old daughter with the content of a real email containing specific school-related details).

(*Id.*, ¶ 208.) All Plaintiffs' CFAA allegations are against all "Defendants" (*Id.*, ¶¶ 202-03, 205-09, 211-13, 216-17) and Plaintiffs allege "at the time they engaged in such conduct, both Defendant Montgomery and Defendant Lewis were acting in their own personal interests as well as in the interests of or at the direction of Mycroft." (*Id.*, ¶ 210.)

Plaintiffs further allege that the result of Defendants' conduct violating § 1030 included "damages and a loss of no less than $5,000 in the last year prior to filing this Complaint, including but not limited to their costs to respond to this offense." (*Id.*, ¶ 212.) Plaintiffs specify:

> Defendants' conduct, whether alone or in concert, caused Plaintiffs to incur damages in the form of actual financial loss through lost employee time spent addressing and responding to hacking attacks, hiring a computer specialist to defend against such attacks, costs associated with increased security (both physical and virtual) at Plaintiffs' offices and home, and the inability to access Plaintiffs' property (firm phone lines and email accounts) for the significant periods of time when functionality was entirely shut down due to the volume of cyberattacks.

(*Id.*, ¶ 213.)

Accepting the CFAA allegations contained in the Verified Complaint as true and drawing all reasonable inferences in favor of the nonmoving party, Plaintiffs' Count III survives Defendants' motions to dismiss.

**D.      Count IV - Violation of the Stored Wire and Electronic Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.***

Lewis argues Plaintiffs' SCA claim fails because (1) they do not plausibly plead that Lewis accessed anything related to Plaintiffs, (2) Plaintiffs' computers and email accounts are not facilities through which an electronic communication service is provided, and (3) Plaintiffs do not allege their information was accessed illicitly while it was in electronic storage. Montgomery's motion to dismiss makes substantially identical arguments. Mycroft's motion to dismiss additionally argues that Plaintiffs plead no plausible facts that any individuals were employed or directed by Mycroft to engage in cyberattacks such that Mycroft is vicariously liable for the alleged conduct.

Title 18 U.S.C. § 2701(a)(1) makes it illegal to "intentionally access[] without authorization a facility through which an electronic communication service is provided . . . and thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system." Section 2707 provides for a civil action for a person aggrieved by such violation. "'[E]lectronic communication service' means any service which provides to users thereof the ability to send or receive wire or electronic communications[.]" § 2510(15). Under the statute, "'electronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" § 2510(12). "[E]lectronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" § 2510(17). The Eighth Circuit has noted that "[t]he SCA is not a catch-all statute designed to protect the privacy of stored Internet communications; instead it is narrowly tailored to provide a set of Fourth Amendment-like protections for computer networks." *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 839 (8th Cir. 2015) (quoting *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1214 (2004)).

Here, Plaintiffs allege that "Defendants knowingly and intentionally accessed without authorization a facility through which an electronic communication service is provided and

thereby gained unauthorized access to Plaintiff's information. Specifically, through this unauthorized access, Defendants obtained access to an electronic communication while it was in electronic storage." (Doc. 1, ¶ 219.) Plaintiffs go on to specify, "on June 1, 2020, and likely on many other occasions as well, Defendants accessed one or more Tumey L.L.P. email accounts and reviewed the contents of emails while they were in electronic storage." (*Id.*, ¶ 224.) Plaintiffs allege the June 1, 2020, access included an email exchange between Tumey, his wife, and their daughter concerning an email from the daughter's school. (*Id.*, ¶ 102.)

Plaintiffs do not allege whether or how its "Tumey L.L.P. email accounts" (¶ 224) or "computer systems" (¶¶ 220, 221) constitute "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" or "any storage of such communication by an electronic communication service for purposes of backup protection of such communication," in order to fall under the SCA definition of "electronic storage." 18 U.S.C. § 2510(17). Because Plaintiffs fail to sufficiently allege that any intentional access without authorization resulted in access to a communication while it was in "electronic storage" as required to fall within the protection afforded by the SCA, Count IV fails to state a claim upon which relief may be granted. *See Anzaldua*, 793 F.3d at 839-42 (affirming district court's decision not to allow amendment of complaint because amendment was futile where subject emails were not in "electronic storage" within the meaning of the SCA); *see also Thornton v. Thornton*, 2021 WL 2172814 at *2-3 (W.D. Ark. 2021) (recognizing disagreement among courts as to what "electronic storage" means under the SCA).

Accepting the allegations of the Verified Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs' Count IV fails to state a claim for which relief may be granted. Defendants' motions to dismiss will be granted as to Count IV.

### E. Count V - Computer Tampering in Violation of § 569.095, Rev. Stat. Mo.

Lewis argues Plaintiffs fail to allege facts showing Lewis engaged in tampering relating to Plaintiffs' computer system or network. Mycroft argues Plaintiffs' computer tampering allegations are conclusory and fail to allege any facts showing that any acts were committed by Mycroft or to make any allegations pertaining to Mycroft. Like Lewis, Montgomery argues Plaintiffs fail to allege facts showing Montgomery engaged in tampering relating to Plaintiffs' computer system or network.

16

Missouri law prohibits tampering with computer data. § 569.095, Rev. Stat. Mo. Such computer tampering occurs when a person:

knowingly and without authorization or without reasonable grounds to believe that he has such authorization:

. . .

(3) Discloses or takes data, programs, or supporting documentation, residing or existing internal or external to a computer, computer system, or computer network; or

(4) Discloses or takes a password, identifying code, personal identification number, or other confidential information about a computer system or network that is intended to or does control access to the computer system or network;

(5) Accesses a computer, a computer system, or a computer network, and intentionally examines information about another person;

(6) Receives, retains, uses, or discloses any data he knows or believes was obtained in violation of this subsection.

§ 569.095.1, Rev. Stat. Mo. Section 537.525.1 provides for a civil action by the owner or lessee of the computer system or network against any person who violates sections 569.095 to 569.099 for any compensatory damages incurred and for attorney's fees. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 20 (Mo. banc 2012).

Plaintiffs allege one or more Defendants committed the acts of (3) through (6) above and specify Defendants accessed Plaintiffs' computer, computer system, or computer network on or about June 1, 2020, and accessed one or more Tumey L.L.P. email accounts for the purpose of creating a fraudulent email that would then be sent to Plaintiff Tod Tumey from his daughter's Tumey L.L.P. email address with an imbedded virus, causing damage in the form of allowing Defendants to access and view email accounts containing highly sensitive privileged material subject to attorney-client privilege and personal information. (Doc. 1, ¶¶ 233-238.) Accepting these allegations as true and drawing all reasonable inferences in favor of the nonmoving party, Plaintiffs' Count V states a claim for which relief may be granted under the Missouri Computer Tampering Act.

Defendants' motion to dismiss is denied as to this claim.

17

**F.      Count VI - Breach of Computer Security in violation of Tex. Civ. Prac. & Rem. Code § 143.001**

Defendants all argue Plaintiffs fail to allege facts showing each defendant "knowingly or intentionally" violated Texas Penal Code § 33.02, in that no defendant has any connection to Texas and there are no allegations pointing to any act committed by each specific defendant.  The defendants generally argue the allegations in this count are conclusory and too general.

Texas Civil Practice & Remedies Code § 143.001 provides for a civil cause of action by a person injured as a result of a knowing or intentional violation of Chapter 33 of the Texas Penal Code.  Texas Penal Code § 33.02(a) provides that "[a] person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."

Here, Plaintiffs allege, "Upon information and belief, on numerous occasions, Defendants, acting individually, together or in concert with others, knowingly and intentionally accessed a computer, computer network or computer system without the effective consent of the owners, the Plaintiffs," and that they did so "with the intent to defraud or harm another or alter, damage or delete the property the Defendants' knowingly accessed."  (Doc. 1, ¶¶ 243-244.)  Plaintiffs allege this conduct

> caused Plaintiffs to incur damages in the form of actual financial loss through lost employee time spent addressing and responding to hacking attacks, hiring a computer specialist to defend against such attacks, costs associated with increased security (both physical and virtual) at Plaintiffs' offices and home, and the inability to access Plaintiffs' property (firm phone lines and email accounts) for the significant periods of time when functionality was entirely shut down due to the volume of cyberattacks.

(*Id.*, ¶ 245.)  *See Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 443 (N.D. Tex. 2004) (denying a motion to dismiss a claim under Texas Penal Code § 33.02 and noting that "[Plaintiff] has alleged that [Defendant] has knowingly accessed [Plaintiff's] computer system without effective consent, and continues to do so" which was sufficient at the 12(b)(6) stage).

Accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiffs, Count VI sets forth allegations sufficient to state a claim for which relief may be granted.

### G.    Count VII – Intrusion on Seclusion – Texas Common Law

Lewis and Montgomery both argue Plaintiffs fail to allege a physical intrusion or any act of eavesdropping by each of them respectively.  Mycroft argues Plaintiffs fail to allege with any specificity how Mycroft was involved in the alleged intrusion and fail to plausibly allege a physical intrusion or any act of eavesdropping.

A claim for Intrusion on Seclusion under Texas law requires Plaintiffs to show: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person."  *Buckert v. Traynor*, No. SA-19-CV-727-XR, 2019 WL 2601346, at *2 (W.D. Tex. June 24, 2019) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)).  "Texas courts have consistently held that an intrusion upon seclusion claim fails without evidence of a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying."  *Cunningham v. Pro. Educ. Inst., Inc.*, No. 417CV00894ALMCAN, 2018 WL 6709515, at *6 (E.D. Tex. Nov. 5, 2018), report and recommendation adopted, No. 4:17-CV-894, 2018 WL 6701277 (E.D. Tex. Dec. 20, 2018).  "[F]ederal courts in Texas have recognized that hacking into a person's private computer constitutes a claim for invasion of privacy."  *Williams v. Google, LLC*, No. 4:20-CV-685-ALM-KPJ, 2021 WL 3612300, at *6 (E.D. Tex. July 16, 2021), report and recommendation adopted, No. 4:20-CV-685-ALM-KPJ, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021).

Here, Plaintiffs allege:

> Upon information and belief, Defendants, through conduct described throughout this Complaint, intentionally intruded upon Plaintiff Tumey's solitude, seclusion, private affairs and concerns by unlawfully accessing Plaintiffs' computers, computer systems or computer networks, accessing and reviewing Tumey's emails, and engaging in harassing and threatening hacking activities directed at Tumey's immediate family, including his wife and minor children.

(Doc. 1, ¶ 253.)  Plaintiffs specify, "Defendants unlawfully accessed Tumey's emails and reviewed private communications sent between Tumey and his family members.  Defendants then utilized those private emails to craft fraudulent phishing emails embedded with sophisticated viruses, so that it would appear to Tumey that the email was actually coming from his daughter." (*Id.*, ¶ 254.)  Plaintiffs note that Tumey "had a reasonable expectation of privacy in email communications that were sent." (*Id.*, ¶ 255.) Plaintiffs further allege "repeated hacking attempts on [Tumey's] wife and children, crude and violent threats of bodily injury, and harassing

19

comments and threats directed at his children[,]" and that all the conduct alleged in the count "would be highly offensive to a reasonable person." (*Id.*, ¶¶ 256-57.)

Plaintiffs' allegations of Defendants unlawfully accessing computers, computer systems or computer networks, accessing and reviewing emails, and engaging in harassing and threatening hacking activities sufficiently state a claim for intrusion on seclusion. *See Hovanec v. Miller*, No. SA-17-cv-766, 2018 WL 1221486, at *1, *10 (W.D. Tex. Mar. 7, 2018) (denying motion to dismiss where plaintiff alleged the defendant accessed the plaintiff's emails, deleted emails containing attorney-client communications, "obtain[ed] and [made] use" of the plaintiff's personal information, and altered credentials on the plaintiff's iCloud account); *Coalition for an Airline Passengers' Bill of Rights v. Delta Air Lines, Inc.*, 693 F. Supp. 2d 667, 670, 675–77 (S.D. Tex. 2010) (denying motion for judgment on the pleadings where the plaintiff alleged the defendant hacked into a private computer, stole personal correspondences, spreadsheets, lists of donors, and research, and left computer "corrupted" and "useless").

Accordingly, accepting Plaintiffs' allegations as true and drawing all reasonable inferences in favor of the nonmoving party, Plaintiffs' Count VII for Intrusion Upon Seclusion states a claim sufficient to survive Defendants' motions to dismiss.

## H. Count VIII - Tortious Interference with Business Expectancies – Missouri Common Law

Defendants argue Plaintiffs fail to allege (1) any specific business expectancy with which any of them interfered, (2) facts showing any defendant had knowledge of any of Plaintiffs' clients, and (3) facts showing any client relationship was lost or severed. Defendants further argue Plaintiffs make no coherent allegations relating to justification or damages.

To state a claim for tortious interference with a contract or business expectancy, Plaintiffs must properly allege: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Nazeri v. Mo. Valley College*, 860 S.W.2d 303, 316-17 (Mo. banc 1993); *see also Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006).

Here, Plaintiffs allege they have developed repeat customers for which they have a reasonable valid business expectancy and probable future business relationships. (Doc. 1, ¶ 266.) Plaintiffs allege Defendants were aware of the nature of Plaintiffs' business, their relationships,

20

and valid business expectancies. Plaintiffs further allege Defendants, without justification, intentionally interfered with this valid business expectancy through a campaign of information warfare targeted at Plaintiffs, which disrupted Plaintiffs' business, injured Plaintiffs' business reputation, and caused Plaintiffs' damages, including lost revenue. (*Id.*, ¶¶ 267-69.)

Accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiffs, Count VIII states a claim for tortious interference with a business expectancy sufficient to survive Defendants' motion to dismiss.

## I. Count IX – Assault – Missouri Common Law

Lewis argues Plaintiffs fail to allege (1) Lewis made an unlawful offer to injure Plaintiff Tumey or that he had the present ability to do so, and (2) facts showing a fear of imminent peril based on any actions by Lewis. Montgomery's arguments are substantially similar. Mycroft argues (1) Plaintiff Tumey fails to allege facts showing Mycroft ever threatened to injure him, (2) none of the threatening emails are plausibly connected to Mycroft, and (3) no email includes any stated intent by the sender to perform any harmful actions. Mycroft also argues Plaintiff Tumey does not identify any emails sent by Mycroft, fails to identify any assaultive conduct performed by Mycroft, and does not allege facts showing Plaintiff Tumey ever had a fear of imminent peril based on the emails.

A claim of assault requires Plaintiff to show "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Armoneit v. Ezell*, 59 S.W.3d 628, 632 (Mo. Ct. App. 2001). "The assault is complete, if the intent, with the present means of carrying it into effect, exists and preparations therefor have been made . . . even though there has been no actual violence to the person." *Id.* Notably, "in Missouri cases of assault unaccompanied by the physical contact of battery are rare[.]" *Phelps v. Bross*, 73 S.W.3d 651, 655 (Mo. Ct. App. 2002) (noting also only one example case from 1901 in which assault was found where the defendant pointed a pistol at the plaintiff and threatened to shoot her but did not fire the weapon, putting the plaintiff in fear of present violence).

Here, Plaintiffs' Count IX, incorporating by reference all the conduct alleged elsewhere in the Complaint, alleges one or more Defendants, acting individually, together or in concert with others, intentionally or knowingly threatened Plaintiff Tumey with imminent bodily injury or offensive contact, with the apparent present ability to effectuate and carry out such threats and

attempts into effect. (Doc. 1, ¶¶ 273-74.) Plaintiffs allege Defendants' conduct was undertaken with specific intent to cause Plaintiff Tumey fear or apprehension of imminent peril or other physical harm, and Plaintiff Tumey experienced apprehension of bodily harm or offensive contact as a result of Defendants' conduct. (*Id.*, ¶¶ 275-76.) Plaintiffs allege that as a result of Defendants' conduct, Plaintiff Tumey was harmed, including by experiencing mental and emotional anguish and suffering. (*Id.*, ¶ 277.) Plaintiffs further allege Defendants acted intentionally and maliciously in sending repeated threats of physical harm to Tumey. (*Id.*, ¶ 279.)

Plaintiffs' allegations fail to show imminent peril of physical contact. Threatening emails and harassing phone calls, as alleged here, do not rise to the level of physical proximity and imminent danger required to allege assault under Missouri law. *See Phelps*, 73 S.W.3d at 655. Accordingly, even accepting these allegations as true and drawing all reasonable inferences in favor of the nonmoving party, Plaintiffs' Count IX fails to state a claim for assault sufficient to withstand Defendants' motions to dismiss. Defendants' motions to dismiss is granted as to Count IX.

### J. Count X - Intentional Infliction of Emotional Distress

Lewis argues Plaintiff Tumey does not allege any conduct attributable to Lewis that allegedly caused or intended to cause extreme emotional distress, or any facts showing Plaintiff Tumey actually suffered emotional distress, bodily harm, or any medical diagnosis of any severity. Mycroft argues Plaintiff Tumey does not show (1) Mycroft was involved at all or otherwise knew about or condoned any alleged attacks or intentionally or recklessly committed extreme and outrageous acts, (2) Plaintiff Tumey suffered emotional distress, bodily harm, or any medical diagnosis of any severity, and (3) any particular Defendant or individual is tied to the intentional misconduct. Montgomery asserts Plaintiff Tumey fails to show (1) Montgomery was involved at all or otherwise knew about or condoned any alleged attacks or intentionally or recklessly committed extreme and outrageous acts, (2) he suffered emotional distress, bodily harm, or any medical diagnosis of any severity, and (3) Montgomery was tied to the misconduct.

"In order to state an emotional distress claim, the plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Nazeri*, 860 S.W.2d at 316. "Although there is not a precise definition of what constitutes 'extreme and outrageous' conduct, the Missouri Supreme Court has held that the conduct 'must have been so outrageous in character, and so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Pujols v. Pujols Fam. Found.*, No. 4:16-CV-1644 CAS, 2017 WL 4310436, at *8 (E.D. Mo. Sept. 28, 2017) (quoting *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (en banc)). "The conduct must be 'more than malicious and intentional' and a claim does not lie for mere 'insults, indignities, threats, annoyances, or petty oppressions.'" *Id.* (quoting *Polk v. INROADS/St. Louis, Inc.*, 951 S.W.2d 646, 648 (Mo. Ct. App. 1997)). The Court must determine whether the subject conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery[,]" the standard being "whether an average member of the community upon learning of the facts alleged by plaintiff would exclaim 'outrageous!'" *Id.* (quoting *Polk*, 951 S.W.2d at 648). "Missouri case law reveals very few factual scenarios sufficient to support a claim for [intentional infliction of emotional distress]." *Id.* (quoting *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 310 (8th Cir. 2009)).

Here, Plaintiff Tumey's Count X incorporates by reference all the conduct alleged elsewhere in the Complaint and alleges through the campaign of targeted information warfare and cyberattacks, including threats relating to Plaintiff's family and young children, Defendants acted intentionally or recklessly to cause Plaintiff extreme emotional distress. (Doc. 1, ¶ 284; Doc. 1-9, pp. 2-10 and exhibits referenced therein.) Plaintiff Tumey alleges Defendants' conduct was extreme and outrageous in character, going beyond all bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized community, and that Defendants' actions were done with the intent of causing actual emotional distress and harm to Plaintiff and members of his family. (Doc. 1, ¶¶ 285-86.) Plaintiff alleges he has experienced extreme emotional distress as a result of Defendants' conduct. (*Id.*, ¶ 287.)

The conduct alleged in Plaintiffs' Verified Complaint, taken as true, fails to allege conduct that is "more than malicious and intentional" and beyond "insults, indignities, threats, annoyances, [and] petty oppressions." *Pujols*, 2017 WL 4310436, at *8. Critically, Plaintiff Tumey also fails to allege that any such conduct resulted in bodily harm. *Nazeri*, 860 S.W.2d at 316. Accepting the allegations of the Verified Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, Count X fails to adequately state a claim for intentional infliction of emotional distress, and Defendants' motions to dismiss will be granted as to Plaintiffs' Count X.

**Conclusion**

After careful consideration and for the reasons above, the Court finds it has jurisdiction and Plaintiffs have stated claims for which relief may be granted.

Accordingly, the Court **ORDERS** as follows:

(1) Defendant Michael Lewis's motion to dismiss (Doc. 17) is **GRANTED as to Count IV, IX, and X and DENIED in all other respects**.

(2) Defendant Mycroft AI, Inc.'s motion to dismiss (Doc. 28) is **GRANTED as to Count IV, IX, and X and DENIED in all other respects**.

(3) Defendant Joshua Montgomery's motion to dismiss (Doc. 64) is **GRANTED as to Count IV, IX, and X and DENIED in all other respects.**

**IT IS SO ORDERED.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  October 14, 2021

24