UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TUMEY L.L.P., TOD T. TUMEY,<br><br>    Plaintiffs,<br>vs.<br><br>MYCROFT AI INC., JOSHUA MONTGOMERY, MICHAEL LEWIS<br><br>Defendants. | Case No. 4:21-cv 00113 |

## DEFENDANTS' MOTION FOR ATTORNEYS' FEES

This Court issued Judgment in the captioned matter on December 5, 2022. (Doc. 298; *see also* Doc. 294 (Verdict Forms).) Defendants won by jury verdict all triable claims. (*See id*.) Defendants prayed for an award of attorney's fees and costs in their Answer to Plaintiffs' Verified Complaint. (Doc. 113 at 27.) Pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, and corresponding case law discussed below, Defendants respectfully move the Court for an award of attorneys' fees incurred in defending the instant action.

Throughout the course of the captioned matter, Plaintiffs' behavior was driven by a desire to drive up Defendants' financial costs to get them to settle and admit fault where there was none. Plaintiffs' behavior is best exemplified by the fact that they never conducted a proper investigation of who may be responsible for the alleged cyber incidents, to the extent they even occurred, opting instead to use Plaintiff Tumey's good friend and business partner Chilton Webb for a cursory investigation. As the jury accurately identified, Defendants were not the least bit responsible for any of the alleged harassment that Plaintiffs received yet were forced to defend themselves to the very end.

1

Plaintiffs never had their ostensibly compromised electronics examined forensically, despite requests for them to do so. On the other hand, Plaintiffs demanded gigabytes worth of electronic documents from Defendants, which Defendants labored arduously over the holidays to produce, and to this day there is no evidence whatsoever that Plaintiffs ever downloaded or reviewed any of the nearly 2,000 emails and over 9,000 pages of data from the electronic sharefile.

The two depositions of Mycroft principals taken by Plaintiffs lasted three (3) hours at most – in total – and not one document produced by Mycroft was introduced or probed, either during depositions or at trial. Plaintiffs alleged that sensitive data was compromised, yet they never alerted Texas Bar authorities or any clientele as would be required under rules of professional conduct and most States' consumer protection laws.

Throughout the course of litigation and motion briefing, Plaintiffs continued to assert that material facts were in dispute when they simply were not. As an example, Plaintiff Tumey alleged repeatedly throughout trial that his firm and retained counsel continued to be under "attack" by Defendants (even as the trial was in session and Defendants obviously had no ability to log into a computer and engage in cyberattacks), yet no evidence was propounded, either *in camera* or to counsel for Defendants, to back up this assertion.

Plaintiffs' conduct led to an expensive legal defense on behalf of Defendants, including a week-long trial that need not have happened, totaling about $800,000.00. No mitigation or limitation of that expense was possible in a case asserting treble damages, attorneys' fees, and personal liability against founder Joshua Montgomery and CEO Michael Lewis.

At the end of trial, when the jury verdict was read, Plaintiff Tumey glowered at the jurors in open court and demonstratively waved his arms at them in protest. Rather than acknowledge what was obvious to the unanimous jury – that these alleged attacks, though unfortunate, were not

2

caused by Defendants, and that proof of such was available by analyzing their own data – Plaintiff Tumey kicked a chair toward the Court Clerk, startling her. Tumey faced rebuke by the Chief Judge for this misconduct.

Defendants ask that this Court use its inherent power to sanction Plaintiffs for bad-faith conduct in this litigation by assessing attorney's fees for all claims against all Defendants, or in the alternative for all claims against Michael Lewis.

## **LEGAL STANDARDS**

While the Eighth Circuit has not yet granted a prevailing RICO defendant attorneys' fees, other "[c]ourts … have never construed [RICO's attorneys' fee] provision as precluding a prevailing defendant from recovering attorneys' fees when authorized elsewhere." *Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996) (collecting cases); *Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988) (permitting prevailing RICO defendants to recover attorneys' fees). The Eleventh Circuit has held that "statutory silence" does not act "as an implicit prohibition against awarding attorneys' fees to [defendants]." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1257 (11th Cir. 2014) (discussing 18 U.S.C. § 1514A(c)); *see also Snyder v. Acord Corp.*, No. 19-1112 at 9 (10th Cir. 2020).

The Supreme Court pointed out in *Chambers v. NASCO, Inc.* that an exception to the "American Rule," "allows federal courts to exercise their inherent power to assess such [attorneys] fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U. S. 240, 421 U. S. 259, 260, as when the party practices a fraud upon the court, *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580, or delays or disrupts the litigation or hampers a court order's enforcement, *Hutto v. Finney,* 437 U.S. 678, 689, n. 14, *Chambers v. NASCO, Inc.,* 501 U.S. 32,

3

33 (1991). Even where vexatiousness was not determined until the conclusion of the litigation, a lower court, granting an award for Defendants attorneys' fees, did not abuse its discretion because the Plaintiff "himself made a swift conclusion to the litigation by means of summary judgment impossible *by continuing to assert that material factual disputes existed."* (emphasis added) *Id.* at 34. As the Eighth Circuit identifies, this is because "[w]e have little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was only firing blanks." *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 685 (8th Cir. 1997) (quoting *Brandt v. Schal Assoc., Inc.*, 960 F.2d 640, 648 (7th Cir.1992)).

Texas Civil Procedure & Remedies Code Chapter 10 states: "The signing of a…motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that…(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery…" The Texas Harmful Access by Computer Act, Tex. Civ. Prac. & Rem. Code 143.001 *et. seq*. states that a "person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner." Defendants ask this Honorable Court to grant attorneys fees for the cost of defending against the Texas Harmful Access by Computer Act, Tex. Civ. Prac. & Rem. Code 143.001 *et. seq*. claim pursuant to Texas Civil Procedure & Remedies Code Chapter 10 when it was clear that the Plaintiffs did not think their computer, computer network, or computer system was actually breached by the time they opposed Defendants Motion for Summary Judgment, as evidenced by their never notifying any clients or authorities of such a breach and specifically testifying there were no such breaches during depositions. The Texas Civil Procedure & Remedies Code Chapter 10 has been used in similar contexts related to different

4

Texas State laws to award a prevailing defendant fees finding that "a just sanction must be directed against the abusive conduct with an eye toward remedying the prejudice caused to the innocent party, and the sanction must be visited upon the true offender." *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 363 (Tex. 2014). The innocent party there, as here, was a Defendant who did nothing wrong; the true offender, the Plaintiffs who filed in bad faith and "for an improper purpose (leveraging a settlement)." *Id.* at 365. Here too, reimbursing attorneys' fees is justified.

## ARGUMENT

Federal Rule of Civil Procedure 54 allows for an award of attorneys' fees to the prevailing party. FRCP 54(d)(2). While the Eighth Circuit has not seen a case with such bad-faith on the part of the Plaintiffs to warrant a granting of attorneys' fees to a successful RICO defendant, that relief is justified here. Courts grant prevailing defendants attorneys' fees "as both compensation for defendants' expenses and as a deterrent to any similar performance in the future." *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 647 (7th Cir. 1992) (the "attempt to succeed on [the] RICO complaint … is an egregious and unjustified abuse of the judicial process"). The Seventh Circuit affirmed an award of $443,564.66 in Rule 11 sanctions to compensate defendants for their legal costs expended defending against a RICO claim in *Brandt*, 960 F.2d at 648. Similarly, the Seventh Circuit also analyzed a defendant's chance to recover attorney's fees in *Sullivan v. Hunt.* 350 F.3d 664 (7th Cir. 2003). There, though Hunt requested attorney's fees under Rule 11 of the Federal Rules of Civil Procedure and the court found it untimely, the court suggests it could be open to granting such fees to another successful RICO defendant who requested them under 54(d) when it interprets, *Zenith Ins. Co. v. Breslaw,* 108 F.3d 205 (9th Cir. 1997) as "holding that a prevailing RICO defendant may receive attorney's fees under Federal Rule of Civil Procedure 54(d))." *Id.* at 665. State courts have also found justification to grant defendants attorney's fees when the state,

5

"Racketeer Influenced and Corrupt Organizations ("RICO") Act claims lack substantial factual support." *Gray v. Novell, Inc.*, No. 8:06-CV-1950-T-33TGW, 2010 WL 2593608, at *1 (M.D. Fla. Feb. 22, 2010), report and recommendation adopted, No. 8:06CV1950T33TGW, 2010 WL 2612328 (M.D. Fla. June 28, 2010).

From the first instance in this case, "timing" was alleged as proof that Defendants were the cause of Plaintiffs' alleged problems. But as the Eighth Circuit explained, "[t]he only evidence Tumey directly pointed to at the hearing was temporal proximity." *Tumey v. Mycroft AI*, 27 F.4th 657, 666 (8th Cir. 2022). The testimony from both Tumey and his expert, Webb, was that there was an attack or uptick in harassing activity when a significant development in the litigation occurred." On its face, the Court found this an unconvincing argument, even if true, as "[s]ubject to limited exceptions, [], court documents and court proceedings are open to the public. Too much weight cannot be placed on timing when, as in this case, public documents and proceedings are involved." *Id.*

At trial however, it became evident that no expert had tied the idea of timing to the litigation. Upon review of a docket, Webb stated something to the effect of, "I don't know what this is, but if you're telling me it's a list of events in this case, then I'll believe you" (paraphrased). Webb then would not (or could not) affirm that the dates of attacks were in any way significant to the trial. There was no evidence presented at any point which showed what happened on February 25, 2021. Instead, a claim was made that on February 26, hack attempts went up 181%, despite the 24th and 26th being available, showing modest 404 errors and February 25th being nowhere to be found in Webb's Expert Report. Then in his deposition the number becomes a very specific, "251 individual sophisticated hacking attempts," which matches no other documentation. Tumey Deposition 196: 14-17.

The timing argument was also never shown by the documents handed over in discovery nor presented at trial. A day later, a week later, a month later, around random filings, etc. is not a pattern. The timeline attached to Webb's report was not something he put together, as he explained both at trial and in his deposition. It was not his analysis that made the decision whether or not to include certain incidents on the chart as "nefarious." Rather than "timing" being evidence of a connection, it is evidence that Plaintiffs can highlight events that occurred near other events in a chart and completely ignore other events altogether. The honeypot was actually available months earlier than stated in filings. Even if the particular date in Webb's expert report was an oversight/mistype, the website was crawled and indexed by Yelp (an Amazon search engine) on December 14, 2022, two days before Plaintiffs assert it existed on the internet. There has never been a timing argument, creating a pattern, in this case. Despite that truth, Plaintiffs continued to assert to the court that there was some timing element, promising to prove it up along the way. This ingenuine promise of a connection cost Defendants in excess of $800,000.

Perhaps one of the most important aspects of timing occurred when Plaintiff Tumey was probed at trial as to when exactly his law firm was shut down due to the alleged attacks. Tumey could not answer this simple question. It seems implausible that a plaintiff who seeks relief from the Court for misconduct that hampers his ability to practice law, alleging his law firm was repeatedly shut down, cannot answer such a question that was bound to be asked. It also was maybe the emails, or maybe the phone calls, or maybe the hack attempts that "shut it down." Eric Adams told the Court he received a total of one spam message he thought could be connected to the others, yet somehow he was part of a firm that was shut down? Adams also testified that at no time was he unable to pursue the patent litigation at issue. At the Preliminary Injunction Hearing, during his deposition, and at trial, "Webb testified that he had not found any forensic evidence to attribute

7

any of the cyber-attacks or harassment to any of the Mycroft defendants." *Tumey v. Mycroft*, 27 F.4th at 663. Both Tod Tumey and Chilton Webb admitted they never suspected Michael Lewis and had no evidence to tie him to any claim. Tumey showed he was unsure who Michael Lewis was, attributing Montgomery's traits to him at his deposition. Webb, at his deposition, clearly explained they never even suspected Michael Lewis. When asked what evidence Tumey had that anything was Lewis's work he repeatedly confused Montgomery and Lewis, talking about things Montgomery arguably did but attributing them to Lewis like, "[H]e was heavily involved with the firm and he's publicly stated that he uses his expert cyber skills to destroy us. He's publicly stated that…on the Mycroft website." Tumey Deposition, 137: 24-25; 138:1-8. When Webb accurately described Lewis in his deposition it was only so much to say, "I honestly didn't suspect Lewis. I don't remember what his -- any real details about him." Webb Deposition, 210: 3-4.

Webb repeated this admission on the stand in front of this Honorable Court. Yet rather than agreeing there was no material fact at issue, as Plaintiffs were required to do when there was none, they asserted time and again through trial that someway, somehow there would be a connection between the Defendants and the alleged acts.

Similarly, Plaintiffs' key witnesses, Tod Tumey and Chilton Webb had admitted during their depositions that there was no successful breach, and repeated this on the stand, thus Plaintiffs violated Texas Civil Procedure & Remedies Code Chapter 10 by continuing to pursue the Texas State Law claim under Texas Harmful Access by Computer Act, Tex. Civ. Prac. & Rem. Code 143.001 *et. seq*. which requires "knowingly and intentionally ***accessing*** a computer, computer network or computer system without effective consent," and award attorneys' fees associated with defending against that claim. With no actual access, there was no potential that anyone at Mycroft would be liable under the Texas law. Rather than admit this fact, they opposed Mycroft's Motion

8

for Summary Judgment and Directed Verdict regarding this count, suggesting to the Court that perhaps their expert was wrong and there was a breach.

This case is rife with bad-faith accusations against Defendants who deigned to use the legal system. Proof they were made in bad faith is evident in how little Plaintiffs did to resolve their alleged issues. They admitted to having problems which required Webb to "destroy" and "relaunch" their website before any of these attacks, but rather than choosing a different service, explained at trial that they are still hosted by GoDaddy despite multiple public breaches to the GoDaddy backend server. Of the thousands of documents Mycroft, Michael Lewis, and Joshua Montgomery provided during litigation not one document was opened.

Any information that Defendants could use to clear their names (for instance, the results of subpoenas, the Tumey computer system, Tumey LLP network access etc.), was withheld for "security purposes." In fact, Tumey himself alleged in filings before this Court that he would never turn over his computers or other technology for third party analysis – effectively admitting to potentially withholding exculpatory evidence. (Doc. 264 at 4.) Tumey repeated this assertion at trial. There was no contact to the Texas State Bar, the FBI, clients, etc. as would be expected with actual cyberattack concerns.

Over the course of the litigation (much like the underlying patent litigation, that for a year was "against" the Mark I and Mark II – a product that didn't exist yet – only to be explained as "against" three other software techniques not created or sold by Mycroft), what they were saying changed – they were breached (Verified Complaint at §101), then they were not breached (Webb Deposition, 32: 13-15), it was community members (Webb Deposition: 126: 18-25), then it was Montgomery (Webb Deposition 123: 24-25; 124:1), then it was Michael with his (re: Montgomery's) "cyber warfare skills" background that "he" allegedly bragged about. (Tumey

9

Deposition, 161: 16-21) Their firm was shut down for "significant periods of time" because of the "cyberattacks." Verified Complaint at §245. Then it wasn't shut down at all. (Testimony of Eric Adams at Trial). Then at trial it was instead that the phone lines were jammed for a day or two because people were calling to tell Plaintiff they had been spoofed. Finally, in Webb's report Paragraph 47 on Page 14 says, "The correlation of the occurrence spikes in the 20 number of hacking attempts spikes in temporal proximity to 21 activities in this case is clear evidence of an 22 association between the cyberattacks and the parties 23 involved in this litigation." He confirmed that at his deposition. Webb Deposition 26: 18-25. Then on the stand, he categorically refused to tie the timing to anything of significance, or to the Defendants.

If Plaintiffs never suspected Michael and never had a breach, there was no way they should have filed the Texas Harmful Access by Computer Act claim against him, and at the very least, they could not in good faith have opposed his Motion for Summary Judgment on that count. Lumping Defendants together ex post facto, does not somehow make Michael potentially liable and they should be instructed to pay for attorney's fees incurred defending against it on Michael's behalf.

## CONCLUSION

Plaintiffs were firing blanks, hoping to startle or scare Defendants into settling for some untold amount of money – the same shakedown method used from the first demand letter. They continued to, in bad faith, assert to this Court that there was a timing element involved when there simply was not. They similarly continued to assert there were material facts at issue when there were not, to try to push Defendants to settle. In doing so, they asked the Court, in bad faith, to believe at some point they would be able to tie Defendants to hateful email and hack attempts. They continued to claim there would be evidence, even when they never suspected Michael Lewis,

10

Case 4:21-cv-00113-BP   Document 300   Filed 12/19/22   Page 10 of 12

and when they never had even an expert who thought timing tied to the events at issue. There was never a shred of evidence, and while the court was correct to give Plaintiffs the benefit of the doubt that they would be able to present connecting evidence, Plaintiffs acted in bad faith, telling the Court they would, after discovery, show there would be such evidence. For an attorney to propound a case like this, Plaintiff Tumey and his law firm should face consequences in the form of an award of attorneys' fees made payable to Defendants.

To the extent it would be helpful for the Court to decide this issue, Defendants respectfully request the opportunity to provide more argument at a hearing. Defendants also are willing to provide legal invoices, *in camera*, for the Court's review and substantiation.

Dated: December 19, 2022

Respectfully Submitted,

 /s/ Robert A. Horn
Robert A. Horn MO Bar #28176
Andrea S. McMurtry MO Bar #62495
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd, Suite 1100
Kansas City, MO 64108
Telephone: (816) 421-0700
Facsimile: (816) 421-0899
rhorn@hab-law.com
amcmurtry@hab-law.com

-and-

 /s/ David L. Marcus
David L. Marcus     MO Bar #47846
BARTLE & MARCUS LLC
4700 Bellview, Ste. 200
Kansas City, MO 64112
(816) 256-4699
dmarcus@bmlawkc.com

**Attorney for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

*/s/ Robert A. Horn*
Attorney
